IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAY 15 P 1: 34
CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| JAMES NICHOLAS GUYSE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 111-052 |
| | ) | |
| DONALD BARROW, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate incarcerated at Washington State Prison, in Davisboro, Georgia, brought the above-captioned petition pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

### I. BACKGROUND

On November 2, 2004, a Richmond County grand jury indicted Petitioner for one count of malice murder, one count of felony murder, five counts of aggravated assault, one count of driving under the influence of alcohol, and one count of driving with excessive blood alcohol concentration. (Doc. no. 13-4, pp. 89-93.) A bench trial was held in the Superior Court of Richmond County, and the trial judge found Petitioner not guilty as to the

---

[1] Petitioner is incarcerated at Washington State Prison, where the warden is Donald Barrow. As the warden of Petitioner's current place of incarceration is the proper Respondent in this case, pursuant to Fed. R. Civ. P. 25(d)(1), the **CLERK** is **DIRECTED** to substitute Donald Barrow as Respondent in this case.

malice murder charge and guilty as to all the remaining offenses. (Id. at 88.) The trial judge sentenced Petitioner to a term of life imprisonment on the felony murder count, a concurrent 10-year term of imprisonment on each aggravated assault count, and concurrent 12-month sentences on the driving under the influence count and the driving with excessive blood alcohol count. (Id. at 101.)

Petitioner raised a single claim on appeal: that the evidence admitted against him at trial was insufficient to support his felony murder and aggravated assault convictions. (Doc. no. 13-1, pp. 8-12.) On March 1, 2010, the Georgia Supreme Court rejected Petitioner's contentions and affirmed his convictions. Guyse v. State, 690 S.E.2d 406, 407-10 (Ga. 2010).

Without filing a state habeas corpus petition, Petitioner proceeded to timely file the instant § 2254 petition, along with a brief in support thereof, in which he raises the same sufficiency of the evidence claim he raised on direct appeal. (Doc. nos. 1, 1-1.) In his answer and brief in support of his answer, Respondent argues that Petitioner's § 2254 claim is without merit. (See doc. nos. 12, 12-1.) In addition, Petitioner filed a reply to Respondent's answer. (Doc. no. 14.) The Court resolves the matter as follows.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 787 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011) (quoting Harrington, 131 S. Ct. at 786; Woodford v. Visciotti, 537 U.S. 19, 24 (2002)) (internal citation omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

3

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA mandates a highly deferential standard of review for state court factual determinations. With regard to factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. ___, 130 S. Ct. 841, 848-49 (2010) ("The term 'unreasonable' is no doubt difficult to define. It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (internal citation and punctuation omitted)). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence." See also Reese v. Sec'y, Fla. Dep't of Corr., ___ F.3d ___, No. 11-12178, 2012 WL 1059452, at *7 (11th Cir. Mar. 30, 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly

4

erroneous standard of review." (quoting Stephens v. Hall, 407 F.3d 1195, 1202 (11th Cir. 2005) (punctuation omitted)).

## III. DISCUSSION

As noted above, in his sole § 2254 claim, Petitioner asserts that the evidence admitted against him at trial was insufficient to prove beyond a reasonable doubt that he committed the offenses of felony murder and aggravated assault. (Doc. no. 1, p. 5; doc. no. 1-1, pp. 4-20; doc. no. 14, pp. 1-7.) Evaluating this claim on direct appeal, the Georgia Supreme Court set forth the following summary of the trial evidence:

> On Thursday, October 14, 2004, Guyse's wife picked him up at a friend's house after work around 7:30 p.m. Guyse, a heavy drinker, was already drunk, and his wife could smell alcohol on him. She drove him home, but Guyse left around 10:30 or 11:00 p.m. in his wife's silver 2003 Mitsubishi Galant. Guyse called his wife several times over the next hour or so, sounding even drunker than he did when he left home. The last call was sometime around midnight.
>
> Guyse stopped at the Golden Pantry gas station and convenience store on Mike Padgett Highway and bought two Smirnoff alcoholic beverages. Guyse was so drunk when he left the store that he mistook the store clerk's 1966 Ford Mustang for his wife's 2003 Mitsubishi Galant. Two customers tried to convince Guyse that he was too drunk to drive, but Guyse insisted that he was fine. They relented only when he agreed to allow one of them to follow him home, but Guyse spun out and sped off onto Mike Padgett Highway just as the man was getting in his car to follow him.
>
> Guyse's first victim, Brian Joseph Daniel, was driving on Mike Padgett Highway that night. Daniel passed two police cars that had pulled a vehicle over on the side of the road. Shortly thereafter, Daniel saw Guyse's Mitsubishi (which he later identified) pass him going the opposite direction towards the two police cars. As Daniel looked in his rearview mirror, he saw Guyse make a u-turn on the four-lane highway and fall in behind him to avoid passing the two police cars. Guyse tailgated Daniel, cut him off several times, and threw a beer bottle at him before deliberately ramming his truck from behind.

5

The impact knocked Daniel to the far side of the road across three lanes of traffic, where his engine stalled. As Daniel tried to restart the truck, he saw Guyse make a u-turn and speed directly towards him. Fortunately, Daniel was able to restart his vehicle, and he avoided a head-on collision with Guyse only by swerving sharply to the side at the last second. Guyse then made another u-turn and chased Daniel at speeds up to 100 miles per hour. Daniel eventually escaped and drove to his mother's house. During the confrontation, Daniel managed to place two 911 calls. Three other 911 calls came in around the same time about a car forcing people off the road on Mike Padgett Highway.

Deputy Darrell Adams of the Richmond County Sheriff's Office responded to Daniel's 911 calls. On the way to Daniel's mother's house, a report came over the police radio about a car wreck on Mike Padgett Highway involving a small, light-colored vehicle. Deputy Adams did not immediately make the connection between Daniel and the car wreck on Mike Padgett Highway. Once it became clear how close the two incidents were in time and place, Deputy Adams asked Daniel to describe the vehicle that rammed him. Daniel said it was a tan, beige, or golden colored Mitsubishi, and Deputy Adams asked him to go to the crash site to see if the car that had chased him was involved in the wreck. Daniel followed Deputy Adams to the scene of the crash, where he identified the silver 2003 Mitsubishi Galant driven by Guyse as the vehicle that chased him and rammed his truck earlier.

Within minutes of the confrontation with Daniel, Guyse had come across three other vehicles on Mike Padgett Highway that were driving in the opposite direction. Reginald C. Lewis was driving in the far-right lane on his side of the road when he saw Guyse jerk the steering wheel abruptly and cross the median towards him. Lewis avoided a head-on collision only by swerving off the road in the nick of time. Guyse drove back to the far-right lane on the correct side of the road before again veering sharply into oncoming traffic, barely avoiding a head-on collision with Nancy and Anthony Price's jeep due to quick evasive action by Ms. Price.

Doris Harris, who was behind the Prices in a Honda Accord, was not so lucky. Harris saw Guyse's headlights coming towards her, but before she could get out of the way, Guyse slammed into her car head-on. Ms. Harris suffered severe, permanent injuries. Her 17-year-old daughter, Janay Levy, was killed. Guyse had a blood alcohol concentration of 0.249, over three times the legal limit.

Guyse, 690 S.E.2d at 407-08. Applying the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), the Georgia Supreme Court concluded that "[t]he evidence, viewed in the light most favorable to the verdict, was therefore more than sufficient to authorize the trial court to find Guyse guilty beyond a reasonable doubt of the crimes of conviction. Five convictions for aggravated assault and a conviction for felony assault are entirely appropriate under the evidence." Id. at 409 (citation omitted). In addition, the court specifically rejected Petitioner's contention that "the evidence was insufficient to support a finding beyond a reasonable doubt that he possessed the mental state necessary to commit felony murder and its predicate felony, aggravated assault." Id. at 408-09.

As correctly noted by the Georgia Supreme Court, the standards from Jackson v. Virginia apply to claims of insufficiency of the evidence. 443 U.S. at 316. The Supreme Court held in Jackson that a conviction only comports with the Due Process Clause if the evidence produced at trial is sufficient to convince the factfinder beyond a reasonable doubt of the existence of every element of the offense in question. Id. The key inquiry is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Along with these basic principles regarding sufficiency of the evidence, the Court is also guided by the AEDPA's mandate that the state court's factual determinations are presumptively correct absent rebuttal by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

Here, the Court finds that in deciding Petitioner's challenges to the sufficiency of the evidence as to his felony murder and aggravated assault convictions, the Georgia Supreme

7

Court did not reach a result contrary to a Supreme Court case with materially indistinguishable facts.[2] Nor did the Georgia Supreme Court apply a rule that contradicts the governing law as set forth in Supreme Court precedent; to the contrary, as noted above, the Georgia Supreme Court applied the correct Supreme Court precedent – Jackson v. Virginia – in its analysis of Petitioner's claim.

Furthermore, Petitioner has not presented any evidence to rebut the presumptive correctness of the factual determinations made by the Georgia Supreme Court in its adjudication of Petitioner's direct appeal. Nor has he shown that the Georgia Supreme Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Petitioner attempts to challenge the accuracy of the appellate court's account of the evidence at trial by pointing to the fact that one of his victims, Brian Joseph Daniel, testified at trial that he was unable to identify the vehicle that hit his car and, following a u-turn, almost collided with him head-on. (See doc. no. 1-1, pp. 5-7, 10-19.) Petitioner argues that, because there was no evidence that he took these actions with respect to Mr. Daniel, the evidence was insufficient to show the requisite

---

[2] While Jackson did involve a challenge to murder conviction, the Court in Jackson determined that the evidence was sufficient to uphold the petitioner's conviction, as did the Supreme Court of Georgia in deciding Petitioner's claims. Jackson, 443 U.S. at 309, 323.

intent as to his felony murder conviction or any of his aggravated assault convictions.[3] (See id.)

This contention is without merit because, as noted by the Georgia Supreme Court, see Guyse, 690 S.E.2d at 407, the governing standard from Jackson v. Virginia requires the court view the evidence in the light most favorable to the verdict. 443 U.S. at 319. Here, the trial record discloses ample evidence that Petitioner was responsible for the incident involving Mr. Daniel, including the testimony of law enforcement officers that Mr. Daniel identified Petitioner's car immediately after the incident and the undisputed evidence that Petitioner engaged in a "drunk driving spree" in the immediate vicinity of the incident with Mr. Daniel. (Doc. nos. 13-5, 13-6; Guyse, 690 S.E.2d at 407.) The Court is prohibited from reweighing the trial evidence in Petitioner's favor on federal habeas review, which is precisely what the Court would have to do for Petitioner to prevail on his § 2254 claim. See Mansfield v. Sec'y, ___ F.3d ___, 2012 U.S. App. LEXIS 9443, at *19-32 (11th Cir. May 9, 2012) (discussing the high level of deference that federal courts must accord to state courts' factfinding process in adjudicating § 2254 claims).

Petitioner has also failed to show that the Georgia Supreme Court was objectively unreasonable in its application of the standards set forth in Jackson to his claim. Having

---

[3]The gist of this argument appears to be that the incident with Mr. Daniel involved evidence of more extreme, intentional actions than the incidents with the other victims, such as making multiple u-turns in a clear attempt to cause a high-speed collision. Thus, according to Petitioner, if it was some other maniacal driver in the same immediate vicinity at the same time that was responsible for the incident involving Mr. Daniel, then the evidence that Petitioner acted with the intent needed to show aggravated assault as to any of the victims would be significantly diminished. (See doc. no. 1-1, pp. 5-7, 10-19; doc. no. 14, pp. 1-7.)

properly evaluated the evidence adduced at trial, the Georgia Supreme Court's determination that the evidence was sufficient to satisfy any of the elements of the offenses at issue[4] did not constitute an objectively unreasonable decision.

In sum, Petitioner has not demonstrated that the state court's decision was based on an unreasonable determination of the facts, and he has failed to show that the state court was objectively unreasonable in its determination that the evidence at trial was sufficient to prove beyond a reasonable doubt that he was guilty of the crimes of conviction. Accordingly, Petitioner is not entitled to habeas relief on the sole claim asserted in his § 2254 petition.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 15th day of May, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4] As noted in the state appellate decision, under Georgia law, a person commits the offense of felony murder "when, in the commission of a felony, he causes the death of another human being irrespective of malice." Guyse, 690 S.E.2d at 408 (quoting O.C.G.A. § 16-5-1(c)). Georgia law further provides that "a person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." Id. § 16-5-21(a)(2).